Statement of Facts.

*Mr. W. M. Lindsey* (with him *Mr. J. O. Parmlee*), for the appellee.

Counsel cited: Dawson v. Laughlin, 2 Y. 446; Bond v. Fitzrandolph, 2 Y. 227; Morris v. Neighman, 2 Y. 453; Skeen v. Pearce, 7 S. & R. 303; Barnes v. Irvine, 5 W. 497; Wilson v. Horner, 59 Pa. 155.

PER CURIAM:

Judgments affirmed.

---

## H. E. DAVIS v. J. B. RUSSELL.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 4, 1891—Decided May 18, 1891.

(a) Land was conveyed to Morse and Russell by a deed calling for Rockwell's land as the boundary on the south. Afterward, on an equal partition by a line running east and west, Russell conveyed the southern half to Morse, the deed calling for the same Rockwell land on the south:

1. Though the parties, when making the partition, by a mutual mistake measured from a fence supposed to be on the Rockwell line, but in fact three feet and more south of it, yet they and their privies in title were bound by the actual Rockwell line called for.

2. The grantee of Morse by a deed also calling for the Rockwell land as the boundary on the south, and taken with knowledge of the same mistaken measurement, was entitled to recover from Russell a strip, equal to the deficiency, still remaining in Russell's possession.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 68 January Term 1891, Sup. Ct.; court below, No. 64 December Term 1887, C. P.

On November 16, 1887, H. E. Davis brought ejectment against J. B. Russell. Issue.

The controversy arising at the trial on May 16, 1890, is illustrated by the plan on the following page.

It was shown that, on February 13, 1882, Carrie W. Denni-

Statement of Facts.

HIGH STREET.

STREET.

POPLAR

J. B. RUSSELL.

SOLD OFF BY RUSSELL.

62 ft. 1½ in.

3.3; Land in Controversy

OF LOT 322

OF LOT 321

NORTH PART

NORTH PART

58¼ ft.

H. E. DAVIS.

MRS. TAFT, LOT 320.

FENCE.
ROCKWELL'S LAND.

son, owning the north half of two lots in Warren borough front-
ing on High street, on the north, and running south along
Poplar street, on the west, conveyed the same to D. R. Morse
and J. B. Russell, bounding the property in the deed by land
of F. Rockwell, on the south. To divide between them the
property purchased, Morse and Russell, on August 16, 1882,
executed a deed in partition, by which Russell conveyed to
Morse his interest in the south half of the land purchased from
Carrie W. Dennison, bounded as follows: "Beginning at the
northwest corner of Rockwell's land on Poplar street, thence
running east along said Rockwell's north line to lot No. 320,
thence north along line of last-mentioned lot 58¼ feet, thence
west parallel with said Rockwell's north line to Poplar street,
thence south along Poplar street 58¼ feet to the place of begin-
ning;" and, by the same deed, Morse conveyed to Russell his

Charge of Court below.

interest in the same purchase, bounded as follows: " Beginning at the northwest corner of lot No. 322, at the intersection of Poplar and High streets, running thence south along Poplar street 58¼ feet, thence east parallel with High street to lot No. 320, thence north along line of last-mentioned lot 58¼ feet to High street, thence along High street west to the place of beginning."

D. R. Morse and J. B. Russell testified to the effect that before the deed in partition was finally executed, the parties went upon the property to measure off Morse's lot; that, beginning at the Rockwell *fence*, they measured north along Poplar street 58¼ feet, and there cut a notch in the rail of the picket fence, to mark the point of division ; that they then measured thence north to. the corner of High street, to find how much Russell would have, and found he had 62 feet, 1½ inches ; that Russell objected to the deed as having an erroneous description, but, being assured that it would make no material difference, the deed was executed. Afterwards, Russell sold off the eastern half of his lot.

On November 23, 1882, D. R. Morse conveyed his lot to David Morse, pointing out the Rockwell fence as the south boundary, and the notch in the Poplar street fence as the north boundary. David Morse, on May 21, 1883, conveyed to H. E. Davis, the plaintiff herein, the Rockwell fence and the notch in the Poplar street fence being pointed out to Davis by D. R. Morse, the grantor's agent, as indicating the boundaries. These deeds to David Morse and from David Morse to Davis called for Rockwell's line as the southern boundary. Subsequently, Davis placed a post, as was alleged, at the notch in the Poplar street fence, but, discovering afterward that the Rockwell *line* was 3.3 feet north of the Rockwell *fence*, brought this ejectment for a strip of equal width remaining in the possession of J. B. Russell.

At the close of the testimony, the court, BROWN, P. J., charged the jury :

The plaintiff, H. E. Davis, brings this ejectment, claiming that the defendant, J. B. Russell, is in the wrongful possession of a strip of land somewhat in excess of three feet in breadth, running from Poplar street eastward. It appears by the evi-

Charge of Court below.

dence, that at some time and in some way, the two lots Nos.
321 and 322, were divided between the owners by a line run-
ning east and west. [At all events, it appears by the evidence
and is undisputed that Carrie Dennison at one time owned the
north half of these two lots. She made a sale to J. B. Russell,
the defendant, and D. R. Morse, of the north half of these two
lots. It appears by the evidence that Mrs. Tamar Rockwell
owns the south half of these two lots. After the deed from
Carrie Dennison to J. B. Russell and D. R. Morse for the north
half of these two lots, these parties divided it as between them-
selves. Russell and wife by deed of partition, deeded to Morse
the south half of the identical land bought of Carrie Dennison,
and Morse deeded to Russell the north half of the same lots.
D. R. Morse and wife subsequently deeded his land, and I be-
lieve by the same description, to David Morse, designating it
as the south half of the north part of the two lots. And David
Morse and wife deeded to the plaintiff the south half of the lot,
designating it, not as the south half of the lot, but as the same
land that was deeded by Carrie Dennison to D. R. Morse and
J. B. Russell, and the same land, I believe the deed designates
it, as partitioned between Russell and D. R. Morse.][7]

It appears by the evidence, and, so far as this is concerned,
there does not seem to be much dispute between the parties,
that the actual, true dividing line between the north half of
the lots 321 and 322, is at a distance something in excess of
three feet northward of the fence of Rockwell. And that dis-
tance, or just the equivalent or nearly so, is the amount of land
in dispute in this case. Now this is the position of the case.
We will answer the points presented by counsel; then you
will see the question of fact upon which the case turns.

The plaintiff requests the court to charge the jury:

1. That the evidence or testimony of D. R. Morse is incom-
petent to affect or vary the boundaries fixed by the deeds in
evidence.

Answer: This point is affirmed, as we think there is no evi-
dence that would authorize you to consider anything other
than the boundaries as fixed by the deeds in evidence.[1]

2. That the evidence or testimony of J. B. Russell is incom-
petent to affect or vary the boundaries fixed by the deeds in
evidence.

Charge of Court below.

Answer: Affirmed.[2]

3. That any mistaken recognition of the Rockwell fence by the plaintiff as his south line, cannot affect the boundaries of the deeds given in evidence.

Answer: Affirmed.[3]

The defendant asks the court to charge the jury:

1. That if the jury believe from the evidence that in the partition of the land referred to by plaintiff as purchased by D. R. Morse and J. B. Russell of Carrie W. Dennison, the common source of title, between said Morse and Russell, the land conveyed to Morse and now owned by plaintiff was located with the Rockwell fence for a south boundary thereof and extending north from said fence 58¼ feet, with a notch in the fence indicating the north boundary thereof, this plaintiff is bound by such locating, and cannot now hold other or more land than was so set off to said D. R. Morse, his predecessor in title.

Answer: The defendant's first point is affirmed, with this qualification; that if Morse and Russell, in making the partition and locating the division line between them, by mutual mistake took the Rockwell fence as the true south boundary of the land bought by them, when in fact the true south line of their land was not the Rockwell fence, but was somewhat in excess of three feet further north, then such mistake in locating the division line was not binding upon the parties, but is subject to correction in accordance with the actual, true location of the southern boundary of the land bought of Carrie Dennison.[4]

2. That if the jury believe, from the evidence, that at or immediately before the purchase by the plaintiff, H. E. Davis, of a part of lots 321 and 322 of David Morse, claimed to include the land in dispute, D. R. Morse as agent of said David Morse, in presence of said Davis, measured from the Rockwell fence 58¼ feet north along Poplar street, as the width of the land to be sold, and showed said Davis the notch in the fence as the mark of the north boundary line of the same, said Davis is restricted to the land so marked off and located on the ground, regardless of the courses, distances and calls mentioned in his deed, and cannot recover in this case, unless the land in dispute is included within said boundaries, i. e., the

Arguments.

Rockwell fence on the south and the notch in the Poplar street fence on the north.

Answer: This point is answered as the preceding one ; affirmed, with this qualification, that if Morse and Russell, in making the partition and locating the division line between them, by mutual mistake took the Rockwell fence as the true south boundary of the land bought by them, when in fact the true south line of their land was not the Rockwell fence, but was somewhat in excess of three feet further north, then such mistake in locating the division line was not binding upon the parties, but subject to correction in accordance with the actual, true location of the southern boundary of the land bought of Carrie Dennison.[5]

4. That if the jury believe from the evidence that the northwest corner of Rockwell's land was located upon the ground and the location thereof marked upon the ground by a fence, which was recognized by the landowners on both sides of it as the division line between Rockwell and his predecessors in title on the south, and D. R. Morse and J. B. Russell and their predecessors in title on the north, for over twenty-one years previous to the purchase of the land in controversy by said Morse and Russell, it constitutes the division between those properties, without reference to the calls and distances mentioned in said deeds. This for the purpose of showing the location of the northwest corner of Rockwell's land mentioned in the deeds offered in evidence by the plaintiff.

Answer: This point is answered in the negative.[6]

The verdict will be a general verdict, for the plaintiff or for the defendant.

—The jury returned a verdict for the plaintiff. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1–3. The answers to the plaintiff's points.[1 to 3]

4–6. The answers to the defendant's points.[4 to 6]

7. The portion of the charge embraced in [ ] [7]

*Mr. Perry D. Clark* (with him *Mr. Samuel T. Neill*), for the appellant.

Counsel cited: Lodge v. Barnett, 46 Pa. 485; Craft v. Yeaney, 66 Pa. 211; Blasdell v. Bissell, 6 Pa. 259; Northumb.

Syllabus.

Coal Co. v. Clement, 95 Pa. 137; Stroud v. Prager, 130 Pa. 401; Mackentile v. Savoy, 17 S. & R. 107; Burkholder v. Markley, 98 Pa. 40; Bartle v. Vosbury, 3 Gr. 277; Payne v. Howard, 107 Pa. 579; Morse v. Rollins, 121 Pa. 537; Willis v. Swartz, 28 Pa. 418; Younkin v. Cowan, 34 Pa. 200; Hetherington v. Clark, 30 Pa. 396; Brown v. McKinney, 9 W. 566; Moul v. Hartman, 104 Pa. 44; Stephens v. Leach, 19 Pa. 262; Bennett v. Morrison, 120 Pa. 390; Moreland v. Moreland, 121 Pa. 573; Mason v. Ammon, 117 Pa. 127.

*Mr. W. W. Wilbur* (with him *Mr. William Schnur*), for the appellee.

Counsel cited: 4 Am. L. C. on R. P., 358, 367; Stuven v. Kalchreuter, 8 W. N. 44; Koch v. Dunkel, 90 Pa. 264; Breneiser v. Davis, 134 Pa. 1.

PER CURIAM:

Judgment affirmed.

---

## B. H. PARKHURST v. J. B. HARROWER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF TIOGA COUNTY.

Argued May 5, 1891—Decided May 18, 1891.

(a) A testator devised land to Benjamin "during the period of his natural life, remainder thereof to his issue, if there be any at the time of his decease, in fee-simple, the issue of any deceased child of the said Benjamin to take the same share and estate as the parent would have been entitled to if living at the death of said Benjamin."

(b) "But on failure of issue of said Benjamin, or of his deceased child or children, at the time of his death, then I direct that the said real estate, above devised to said Benjamin for life, shall at the time of his decease go to and vest in the then heirs at law of me, the said testator, in fee-simple," in shares as under the intestate law:

1. By the word "issue" the testator did not mean "heirs of the body," as a word of limitation, but, instead thereof, the children and grandchildren of his son Benjamin. A definite, not an indefinite failure of